UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DONALD DAVIS,

        Plaintiff,

    v.                       CAUSE NO.: 3:17-CV-652-RLM-MGG

KATHY GRIFFIN, et al.,

        Defendants.

## OPINION AND ORDER

Donald Davis, a prisoner without a lawyer, proceeds on an Eighth Amendment failure to protect claim against Adam Shultz and Nicholas Kennell and an Eighth Amendment claim of deliberate indifference to serious medical needs against Nicholas Kennell, Danielle Wilson, Noe Marandet, Kim Myers, Adriana Simpkins, and Shalana Seifert.[1] In the screening order, the court summarized Mr. Davis' allegations as follows:

> In the amended complaint, Mr. Davis alleges that, on December 2, 2016, he was moved into a cell with Mr. Randall, a fellow inmate. Mr. Davis and Mr. Randall didn't get along; the cellmates had several disagreements, including, who should have gotten the bottom bunk, when the television should be off or on, and who should be allowed to visit the cell. Mr. Randall also tried to intimidate Mr. Davis by staring at Mr. Davis as he slept, complaining about Mr. Davis' race and culture, and becoming upset if he heard Mr. Davis urinate in the cell toilet. Mr. Randall also played chess with himself at night while speaking strange languages, paced all night, told Mr. Davis that his mother was suicidal, and sent letters to the White House. On December 7, Mr. Davis wrote to Counselor Shultz and asked to be moved. On December 8, Mr. Davis and Counselor Shultz

---

[1] For purposes of this order, the court refers to the defendants by their legal names rather the names provided in the complaint. Most of these substitutions are self-explanatory, but the court notes that the defendants have identified "Nurse Abbie" as Adriana Simpkins and "Nurse Shylenia" as Shalana Seifert.

discussed the issues with Mr. Randall. Counselor Shultz said that Mr. Davis couldn't be moved for ninety days and that Mr. Davis had to find a new cellmate on his own. Mr. Davis tried to discuss his cellmate issues with Lieutenant Beamer, who supervised the cell house, but she referred Mr. Davis to the "unit team."

On June 5, 2017, Mr. Randall attacked Mr. Davis in the cell, causing third-degree burns on the right side of Mr. Davis's body with liquid from a hotpot and tearing a ligament in Mr. Davis's left hand. For hours before the attack, Mr. Davis had screamed for Counselor Shultz, whose office was thirty feet from the cell, and had yelled that he needed to be moved from the cell. Officer Kennell, who was working in the cell house, also heard Mr. Davis' requests for help. After the attack, Officers Kennell and Wilson took Mr. Davis to segregation but were later told by a supervisor and a nurse that Mr. Davis needed immediate medical care.

On June 7 and June 19, Dr. Marandnet examined Mr. Davis's injuries and told Mr. Davis that his left hand just needed time to heal. From June 20 to July 28, Mr. Davis was in segregation and received little medical care. On July 7, Kim Myers, a nurse practitioner, recommended X-rays of his left hand and pain medication. Mr. Davis didn't get the pain medication until July 15. On August 19, Nurse Abbie and Nurse Shylenia told Mr. Davis that he no longer needed pads or cream for his burns and refused to treat him. On August 22, another nurse arranged for him to continue receiving treatment. On September 28, X-rays revealed a torn thumb ligament in the left hand. A physical therapist recommended a hand brace and told Mr. Davis that surgery might be necessary. Mr. Davis seeks money damages.

ECF 10 at 1-3. The defendants filed these motions for summary judgment, arguing that Mr. Davis failed to exhaust his administrative remedies with respect to Mr. Shultz, Mr. Kennell, Ms. Wilson, Ms. Simpkins, and Ms. Seifert. Mr. Davis responds that the grievance process was not available.[2]

---

[2] Though Mr. Davis filed his brief on the exhaustion issue as a motion, the court construes it as a response to the defendants' motions for summary judgment.

Angela Heishman, grievance supervisor at the Miami Correctional Facility, attests that a grievance process is available to inmates and is explained to them at orientation.³ ECF 65-1. The grievance policy for the Indiana Department of Correction sets forth a three-step grievance process. ECF 65-2. First, an inmate must try to resolve a complaint informally, typically by speaking to the staff member most directly associated with the complaint. Id. at 13-16. If the inmate can't resolve the complaint informally, he may file a formal grievance with the grievance specialist. Id. at 16-20. The inmate must file a formal grievance no later than twenty business days after the incident giving rise to the grievance. *Id.* at 16. Finally, if an inmate is dissatisfied with the grievance specialist's determination, he may file an appeal with the grievance manager. Id. at 20-22.

Between July 10, 2017, and July 21, 2017, Mr. Davis submitted six grievances about his cellmate, the physical assault, and his medical care. ECF 65-1 at 4-5. Two grievances described Mr. Davis' earlier efforts to obtain a new cellmate by consulting Mr. Shultz, characterizing them as "giving [Mr. Shultz] notice that [Mr. Davis] and [his cellmate were not getting along," and one of those grievances indicated that Mr. Davis was attacked by his cellmate, "who had been acting out in [the cell] for hours before he attacked [Mr. Davis], and no staff came to the cell to find out what was wrong." ECF 65-5; ECF 65-9. The two grievances

---

³ Mr. Davis objects to this declaration, arguing that Ms. Heishman is not a party to this case and that the exhibits supporting the declaration have not been authenticated. However, there is no requirement that declarants must be a party to a case, and the declaration, which identifies Ms. Heishman as the custodian of records, sufficiently authenticates the underlying exhibits. See Fed. R. Evid. 901.

3

referencing Mr. Shultz were rejected as an attempt to grieve a classification issue and an attempt to grieve another inmate. ECF 65-6; ECF 65-10.

In his deposition, Mr. Davis testified that, before filing this lawsuit, he had some understanding of the grievance process, but he didn't have access to the grievance policy. ECF 61-1 at 4-5. He discussed his problems with his cellmate with Mr. Shultz in December 2016, but Mr. Shultz refused to provide him with a formal grievance form. Id. at 11. After the physical assault, Mr. Davis was held in the infirmary until June 20, 2017, and was then held in restrictive status until July 28, 2017. Id. at 8, 19. During his time in the infirmary, he asked correctional staff and medical staff several times to speak with a counselor and for assistance with filing grievances, but his requests were ignored. Id. at 8. In the restrictive housing unit, counselors were available on a sporadic basis, and he only occasionally had access to grievance forms. Id. at 15.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003).

Prisoners must exhaust available administrative remedies prior to filing lawsuits in federal court. 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before

4

administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." King v. McCarty, 781 F.3d 889, 893 (7th Cir. 2015). Our court of appeals takes a "strict compliance approach to exhaustion." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002).

The purpose of the grievance process is to alert officials to a problem so action can be taken to remedy the problem. Maddox v. Love, 655 F.3d 709, 722 (7th Cir. 2011). Proper exhaustion of administrative remedies means that "the grievances must contain the sort of information that the administrative system requires." Strong v. David, 297 F.3d 646, 649 (7th Cir. 2002). "When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." Id. at 650. "[T]he grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." Id.

Inmates are only required to exhaust administrative remedies that are "available." Woodford v. Ngo, 548 U.S. 81, 102 (2006). The availability of a remedy isn't a matter of what appears "on paper," but rather whether the process was actually available for the prisoner to pursue. Kaba v. Stepp, 458 F.3d 678,

684 (7th Cir. 2006). When prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered "available." Id. In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." Dole v. Chandler, 438 F.3d at 809.

The defendants argue that they are entitled to summary judgment with respect to Mr. Shultz and Mr. Kennell on the Eighth Amendment failure to protect claim. They assert that Mr. Davis failed to file any grievances alleging that these defendants failed to protect him against the physical assault. The record contains grievances that refer to Mr. Shultz's refusal to assist Mr. Davis with his requests for a new cellmate and a grievance that references individuals who refused to assist him in the hours leading up to the physical attack, whom he later identified as Mr. Shultz and Mr. Kennell. The defendants suggest that these grievances didn't put them on notice that he was complaining about Mr. Shultz and Mr. Kennell because the only relief he requested was the criminal prosecution of his cellmate. However, Mr. Davis, by strongly implying that the defendants' refusals to assist him caused the eventual physical assault, effectively expressed his dissatisfaction with Mr. Shultz and Mr. Kennell in the grievances, and the request for relief doesn't make this sentiment any less clear.

The defendants also argue that they are entitled to summary judgment with respect to Mr. Shultz and Mr. Kennell on the failure to protect claim because

6

the grievances were untimely. According to the defendants, the grievances should have been filed by July 3, 2017, but Mr. Davis filed no grievances until July 10. Even if the grievances were untimely, Mr. Davis's testimony (which must be assumed to be true at this stage) indicates that correctional staff impeded his access to the grievance process in the infirmary and the restrictive housing unit and that he filed grievances as quickly as he could considering the lack of assistance or resources. ECF 61-1 at 10. Moreover, Mr. Davis testified that he tried to file a grievance about Mr. Shultz as early as December 2016 but Mr. Shultz refused to provide him with a grievance form. "If prison employees refuse to provide inmates with those forms when requested, it is difficult to understand how the inmate has any available remedies." Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004). It's clear that Mr. Davis had some access to the grievance process by July 10, but whether the grievance process was available to Mr. Davis before July 10 remains disputed. Therefore, the motion for summary judgment is denied with respect to Mr. Shultz and Mr. Kennell on the Eighth Amendment failure to protect claim.

Defendants Kennell, Wilson, Simpkins, and Seifert argue that they are entitled to summary judgment on the Eighth Amendment claim of deliberate indifference to serious medical needs. The record contains no evidence that Mr. Davis made any effort to grieve these defendants in relation to his medical care. Though the grievance process might not have been available to Mr. Davis before July 10, it was, at least, partially available to him immediately thereafter and entirely available to him after his release from restrictive status. The record

7

contains no explanation as to why he didn't mention these defendants in connection with his medical care in any grievance. Because the record contains no evidence that Mr. Davis filed or tried to file a grievance with respect to Mr. Kennell, Mr. Wilson, Ms. Simpkins, and Ms. Seifert in connection with his medical care, the court grants the motion for summary judgment with respect to these defendants on the Eighth Amendment claim of deliberate indifference to serious medical needs.

For these reasons, the court:

(1) CONSTRUES the motion in opposition (ECF 70) as a response to the motions for summary judgment (ECF 60, ECF 64);

(2) GRANTS the motion for summary judgment filed by Adriana Simpkins and Shalana Seifert (ECF 61);

(3) GRANTS the motion for summary judgment filed by Nicholas Kennell, Danielle Wilson, and Adam Shultz (ECF 64) with respect to the Eighth Amendment claim of deliberate indifference to serious medical needs but DENIES the motion in all other respects;

(4) DISMISSES Adriana Simpkins, Shalana Seifert, and Danielle Wilson;

(5) ORDERS Adam Shultz and Nicholas Kennell to file a notice by September 7, 2018, as to whether they intend to withdraw the exhaustion defense or proceed with a hearing in accordance with Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008); and

(6) CAUTIONS Adam Shultz and Nicholas Kennell that, if they do not respond by this deadline, the affirmative defense of failure to exhaust administrative remedies will be waived.

SO ORDERED on August 20, 2018

/s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT